IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| REGINA R. FUQUA, #179970, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION  NO. 2:17-cv-251-RAH-JTA |
| | ) | (WO) |
| | ) | |
| SGT. A. BAKER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**<u>RECOMMENDATION OF THE MAGISTRATE JUDGE</u>**

**I.  INTRODUCTION**[1]

This 42 U.S.C. § 1983 action is pending before the court on an amended complaint filed by Regina R. Fuqua, an indigent state inmate, challenging actions which occurred at the Tutwiler Prison for Women.  Doc. 5 at 2–3.  The defendants remaining before the court are Sgt. Adrian Baker, Sgt. Jonathan Birmingham and Sgt. Willie Hurst, correctional officers employed at Tutwiler during the time relevant to the complaint.  In the amended complaint, Fuqua alleges these correctional officers failed to protect her from a second attack by inmate Camille Fields on March 6, 2017.  Doc. 5 at 2–3.  Upon its liberal construction of the complaint, the court construes this pleading to name the defendants in both their individual and official capacities.  Fuqua seeks monetary compensation from the defendants for the alleged violation of her constitutional rights.  Doc. 5 at 4.

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

The defendants filed a special report, Doc. 10, supplemental special report, Doc. 16, and relevant evidentiary materials in support of their reports, including affidavits, institutional documents and medical records, addressing the failure to protect claim presented by Fuqua.  In these documents, the defendants deny they acted with deliberate indifference to Fuqua's safety.

After reviewing the special report and supplement thereto filed by the defendants, the court issued an order on July 14, 2017 directing Fuqua to file a response to the defendants' reports, supported by affidavits or statements made under penalty of perjury and other evidentiary materials.  Doc. 17 at 2.  The order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report [and supplement thereto] and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law."  Doc. 17 at 3 (emphasis in original).  Fuqua filed unsworn responses to this order on July 14, 2017 and July 27, 2017.  Docs. 18 & 21.[2]

---

[2] This court declines to consider Fuqua's responses to the defendants' reports because these responses are not sworn statements or signed with an averment that they were made under penalty of perjury.  *See* 28 U.S.C. § 1746; *Holloman v. Jacksonville Housing Auth.*, 2007 WL 245555, *2 (11th Cir. Jan. 20, 2007) (noting that "unsworn statements, even from *pro se* parties, should not be considered in determining the propriety of summary judgment"); *Gordon v. Watson*, 622 F.2d 120, 123 (5th Cir. 1980) (holding that "the court may not consider [the pro se inmate plaintiff's unsworn statement] in determining the propriety of summary judgment").

Pursuant to the directives of the July 14, 2017 order, the court now treats the defendants' special report (Doc. 10) and supplemental report (Doc. 16) as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Rule 56(a), Fed. R. Civ. P. ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of

proof.  *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish with appropriate evidence that a genuine dispute material to her case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact).  In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage."  *Beard v. Banks*, 548 U.S.

4

521, 530 (2006) (internal citation omitted).  This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering her opposition to summary judgment.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted.  *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007).  The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); *see also* Fed. R. Civ. P. 56(e).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice, there must be enough of a showing that the [trier of fact] could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).  Only disputes involving material facts are relevant and materiality is determined by the substantive law applicable to the case.  *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the [defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements which are "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . .  Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.").  However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [her verified complaint or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F.

App'x 206, 207 (11th Cir. 2011) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)).   In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which she lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact.   *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).   In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.   *Celotex*, 477 U.S. at 323–24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).   "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."   *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).   "[T]here must exist a conflict in substantial evidence to pose a jury question."   *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted).   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."   *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff at the summary judgment stage and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact.  *See Beard*, 548 U.S. at 525.  Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.  Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that Fuqua has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

## III.  DISCUSSION[3]

### A.  Eleventh Amendment Sovereign Immunity

To the extent Fuqua seeks monetary damages from each of the defendants in their official capacities, they are entitled to Eleventh Amendment sovereign immunity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver

---

[3] The court limits its review to the allegations set forth in the complaint.  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend [her] complaint through argument in a brief opposing summary judgment."); *Ganstine v. Secretary, Florida Dept. of Corrections*, 502 F. App'x. 905, 909–10 (11th Cir. 2012) (holding that plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton County School District*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (refusing to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint).

may not be implied. Likewise, Congress' intent to abrogate the States'
immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks

and citations omitted).  Thus, a state official may not be sued in his official capacity unless

the State has waived its Eleventh Amendment immunity, *see Pennhurst State School &*

*Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's

immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states
> that "the State of Alabama shall never be made a defendant in any court of
> law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized
> that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849.  "Alabama has not waived its Eleventh Amendment

immunity in § 1983 cases, nor has Congress abated it."  *Holmes v. Hale*, 701 F. App'x 751,

753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir.

1990)).

In light of the foregoing, the defendants are entitled to sovereign immunity under

the Eleventh Amendment for claims seeking monetary damages from them in their official

capacities.  *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271,

1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are

protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace*

*Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are

unavailable from state official sued in his official capacity).   Summary judgment is therefore due to be granted in favor of the defendants on these claims.

## B. Qualified Immunity

The defendants raise the defense of qualified immunity to the claims lodged against them in their individual capacities.   Doc. 10 at 3.   "The defense of qualified immunity completely protects government officials performing discretionary functions from suit [for damages] in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).   "The purpose of the qualified immunity defense is to protect[] government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."   *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (internal quotations and citations omitted).   "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."   *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted).   "Unless a government agent's act is so obviously wrong, in light of the pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor is immune from suit."   *Lassiter v. Ala. A&M University Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994).   The Eleventh Circuit has determined that

the law is "clearly established" for purposes of qualified immunity "only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." *Jenkins v. Talladega City Bd. of Education*, 115 F.3d 821, 826–27 n.4 (11th Cir. 1997). The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Even so, qualified immunity is only an affirmative defense to a request for damages; it has no impact on requests for declaratory or injunctive relief. *See Wood v. Strickland*, 420 U.S. 308, 315, n.6 (1975) ("Immunity from damages does not ordinarily bar equitable relief as well."), *overruled in part on other grounds by Harlow v. Alexander*, 457 U.S. 800 (1982); *American Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991) (holding that the defense of qualified immunity is limited to actions for monetary damages and does not serve as a defense to actions seeking equitable relief).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority." *Gonzalez*, 325 F.3d at 1234. In this case, it is clear "that the defendants were acting within their discretionary authority[]" as correctional officers at the time of the challenged actions so "the burden shifts to [Fuqua] to show that qualified immunity is not appropriate." *Id*.; *see also Townsend v. Jefferson Cnty*., 601 F.3d 1152, 1158 (11th Cir. 2010). To meet this burden, Fuqua must prove both that "(1) the defendants violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252,

11

1264 (11th Cir.2004); *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (same); *Youmans*, 626 F.3d at 562 (citation omitted) ("[O]nce a defendant raises the defense [of qualified immunity and demonstrates he was acting within his discretionary authority], the plaintiff bears the burden of establishing both that the defendant committed a constitutional violation and that the law governing the circumstances was clearly established at the time of the violation.").  This court is "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated." *Id.*; *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241–42) (holding that the court may analyze the elements attendant to qualified immunity "in whatever order is deemed most appropriate for the case.").

## C.  Deliberate Indifference to Safety

### 1.  Standard of Review

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous [individuals] in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotations and citations omitted). Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows the inmate faces "a substantial risk of serious harm" and with this knowledge disregards the risk by failing to take reasonable measures to abate it.  *Id.* at 828.  A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively

aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jean*, 326 F.3d 1352, 1358 (11th Cir. 2003). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 U.S. at 834. "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staff and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). The Eleventh Circuit, however, has consistently "stress[ed] that a prison custodian is not the guarantor of a prisoner's safety." *Purcell ex rel. Estate of Morgan v. Toombs County, Ga.*, 400 F.3d 1313 (11th Cir. 2005) (internal quotation marks and citation omitted). The duty to protect inmates from one another is not absolute "because the Eighth Amendment addresses only punishment. Whether an injury inflicted by fellow prisoners . . . is punishment depends on the mental state of those who cause or fail to prevent it. The requisite mental state for prison officials is intent, or its functional equivalent, described as deliberate indifference[.]" *King v. Fairman*, 997 F.2d 259, 261 (7th Cir. 1993) (internal quotation marks and citations omitted). "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.'" *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The Eleventh Circuit has consistently held that "to state a § 1983 cause of

action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the [mere] tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso County Jail*, 642 F.2d 134, 136 (5th Cir. 1981)); *Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986).

The law requires establishment of both objective and subjective elements to demonstrate an Eighth Amendment violation. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014). With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exists. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d at 1028–29, As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 837–38; *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).

14

The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .   It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]"  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'"  *Farmer*, 511 U.S. at 834–38, 114 S. Ct. at 1977–80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324–25, 115 L. Ed. 2d 271 (1991). . . .   Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also "draw that inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).   A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . .   Each individual Defendant must be judged separately and on the basis of what that person  knew at the time of the incident."  *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).   A correctional official must be aware of a sufficiently serious threat to an inmate's safety before the Eighth Amendment "imposes a duty to provide reasonable protection.   Merely negligent failure to protect an inmate from attack does not justify liability under section 1983[.] . . .   The known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference."  *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation

marks omitted); *King*, 997 F.3d at 261 ("To sustain his constitutional claim, the inmate must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm.") (internal quotation marks omitted).

Consequently, to survive the properly supported motion for summary judgment filed by the defendants, Fuqua must first demonstrate an objectively substantial risk of serious harm existed to her prior to the challenged altercation with inmate Fields and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), (citing *Caldwell*, 748 F.3d at 1100). If she establishes these objective elements, Fuqua must then satisfy the subjective components. To do so, Fuqua "must [show] that the defendant[s] subjectively knew that [Fuqua] faced a substantial risk of serious harm from [her inmate attacker]. The defendant[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Johnson*, 568 F. App'x at 721 (internal citations omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "***particular threat or fear felt by [the] [p]laintiff***." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added). Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference." *Id*. at 1349 (quotations omitted).

16

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

### 2. Failure to Protect

Fuqua alleges Defendants Baker, Birmingham and Hurst acted with deliberate indifference to her safety regarding an assault committed against her by inmate Camille Fields on March 6, 2017.  In support of this claim, Fuqua asserts that a few minutes prior to the assault made the basis of this complaint she had been in a verbal altercation with inmate Fields during which Fields struck her.  Doc. 5 at 3.  Fuqua complains that after this initial altercation "Sgt. Hurst, Sgt. Baker and Sgt. Birmingham failed to properly detain the inmate Mrs. Fields . . . and while inmate Fields was in handcuffs she assaulted me a second time[.]"  Doc. 5 at 3.

The defendants deny they acted with deliberate indifference to Fuqua's safety. Defendant Baker maintains he had no involvement with the challenged assault because "the incident occurred on A-Night Shift and I was assigned to B-Day Shift[,]" and during his shift on this date he was "conducting equipment inventory."  Doc. 10-1.  The contemporaneously compiled and objective institutional records filed by the defendants support this assertion.  Doc. 10-4 at 15–18.  Defendants Birmingham and Hurst aver that at the time of the assault about which Fuqua complains and under the undisputed circumstances relevant to that time, they did not believe or have reason to believe inmate Fields posed any risk of harm to Fuqua.  Doc. 16-1 at 1–2; Doc. 16-2 at 1–2.  Defendant Birmingham provides the following relevant information:

. . . [I]nmate Fuqua[] alleges, I, Sergeant Birmingham failed to properly detain inmate Fields [after the initial altercation with Fuqua]. When in fact, inmate Fields was handcuffed and separated from inmate Fuqua. Inmate Fuqua was detained in the Shift Office while inmate Fields was being detained in the hallway outside of the Shift Office [in my custody, facts not disputed by Fuqua].

Additionally, inmate Fuqua claims in her ground two that I left inmate Fields unsupervised and that I allowed inmate Fields to assault her (Fuqua). I did not leave inmate Fields unsupervised while in the presence of inmate Fuqua. I was escorting inmate Fields to the Medical Unit for a Body Chart assessment when Sergeant Willie Hurst stopped us to ask inmate Fields a question pertaining to the investigation. As inmate Fields stepped towards the Shift Office, I was standing on the right side of inmate Fields when she (Fields) swung her hand that was no longer in handcuffs to strike inmate Fuqua against the head with the handcuffs. I immediately grabbed inmate Fields with assistance from Sergeant Willie Hurst in placing inmate Fields on the floor and restraining her (Fields) while Sergeant Justin Totty placed handcuffs and leg irons on inmate Fields. . . . [B]ecause inmate Fields was handcuffed I did not believe inmate Fields posed a threat to inmate Fuqua after the first incident. . . . .

Doc. 16-1 at 1–2.  It is clear and Fuqua does not dispute that inmate Fields broke free from Birmingham's custody and one of her handcuffs to perpetuate the attack at issue.

In addressing the deliberate indifference claim lodged against him, Defendant Hurst states, in relevant part, as follows:

While completing the Incident Report in the Shift Office [addressing the initial altercation between inmates Fuqua and Fields], I stopped to ask inmate Fields her AIS number as she . . . stood in Central Hall guarded by Correctional Sergeant Jonathan Birmingham; handcuffed to the back. When inmate Fields approached the Shift Office to divulge her AIS number she struck inmate Fuqua with her right hand [which she had removed from the handcuffs]. At this point, Sergeant Birmingham and I immediately secured inmate Fields. . . . [I]nmate Fields was initially handcuffed and secured while in Central Hall. For this reason, I did not believe inmate Fields posed a threat to inmate Fuqua after the first incident. . . .

Doc. 16-2 at 1–2.

18

Fuqua has offered no evidence which shows the defendants acted in an objectively unreasonable manner after the first attack by inmate Fields. Rather, the record establishes that the defendants acted in an objectively reasonable manner to secure inmate Fields in the aftermath of the first attack, i.e., correctional officers placed her in handcuffs and assigned an officer to escort her from the dorm. Thus, Fuqua fails to establish the objective component of deliberate indifference.

Furthermore, even if Fuqua had satisfied the objective component, her deliberate indifference to safety claim nevertheless fails as the record is devoid of evidence that the defendants were subjectively aware of any risk of harm to Fuqua posed by inmate Fields at the time of the assault made the basis of this complaint. Specifically, Fuqua has presented nothing to show the defendants had knowledge of a strong likelihood that she would be assaulted a second time by inmate Fields on March 6, 2017 as Fields had been restrained in handcuffs and was being escorted by a correctional officer at this time. The record simply contains no evidence that the defendants had knowledge of a credible threat to Fuqua at the time of the challenged attack from which the defendants could infer a substantial risk of serious harm existed to Fuqua or that they made the necessary inference. Instead, the evidentiary materials filed by the defendants establish they did not believe inmate Fields posed any risk of harm to Fuqua at the time of the challenged assault because, to their knowledge, inmate Fields was in handcuffs and under escort by a correctional officer when the assault occurred. In sum, Fuqua has failed to present any evidence that the defendants had subjective knowledge of an impending risk of serious harm to her posed

by inmate Fields prior to the attack made the basis of the complaint, a requisite element for establishment of deliberate indifference.  Thus, deliberate indifference has not been shown. *Johnson*, 568 F. App'x at 722 (holding that complaint properly dismissed because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [the inmate-attacker]."); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (concluding that "the allegations of [Plaintiff's] complaint do not show the requisite subjective knowledge of a risk of serious harm, and, thus, do not state a claim for deliberate indifference resulting from a failure to protect from the attack. . . .  Put another way, because [Plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him [at the time of the attack] and failed to take protective measures, his claim fails."); *Johnston*, 135 F. App'x at 377 (holding that defendants were entitled to summary judgment because Plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [the inmate who attacked him]."); *see also McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants as Plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm.").

Since the defendants did not act with deliberate indifference to Fuqua's safety, they are entitled to qualified immunity from the request for monetary damages made against them in their individual capacities and summary judgment is due to be granted in favor of the defendants on this request for relief.

Insofar as Fuqua's claims against the defendants sound in negligence, such fails to state a claim of constitutional magnitude. *Daniels v. Williams*, 474 U.S. 327, 332 (1986) internal quotation marks and internal citations omitted) (The Constitution "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries."). It is well-settled "[t]hat . . . 'liability for ***negligently*** inflicted harm is categorically beneath the threshold of constitutional [protection].'" *Kingsley*, 576 U.S. 389, ---, 135 S. Ct. 2466, 2472 (2015) (emphasis added in original) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849, 118 S. Ct. 1708, 140 L. Ed. 2d 1043 (1999)); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995) (stating that a plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Green v. Watson*, 2015 WL 4609977, at *2 (S.D. Ill. July 31, 2015) ("[N]egligence claims are not actionable under   § 1983[.].").  Consequently, the "[m]ere[] negligent failure [of a defendant] to protect an inmate from attack does not justify liability under section 1983." *Brown*, 894 F.2d at 1537; *King*, 997 F.3d at 261 ("Negligence, even gross negligence, is not enough.").

## IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment (Docs. 10, 16) be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  Costs be taxed against the plaintiff.

On or before **May 5, 2020**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the proposed factual findings and legal conclusions set forth in the Recommendations of the Magistrate Judge shall bar a party from a *de novo* determination by the District Court of these factual findings and legal conclusions and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact [and law] and those findings are adopted by the district court the party may not challenge them on appeal in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 20th day of April, 2020.

/s/  Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE